Steven C. Smith, Esq., SBN 116246
William D. Chapman, Esq., SBN 100535
Robert J. Hadlock, Esq., SBN 174522
SMITH, CHAPMAN & CAMPBELL
A Professional Law Corporation
1800 North Broadway, Suite 200
Santa Ana, CA 92706
Tel: (714) 550-7720 / Fax: (714) 550-1251

Attorneys for DANA LEMANSKI, Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA LEMANSKI<br><br>            Plaintiff,<br><br>    vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; JOHNSON CONTROLS, INC., a Wisconsin Corporation; JOHNSON CONTROLS NORTHERN NEW MEXICO; and DOES 2 to 100, inclusive<br><br>            Defendants. | Case No. C08-00548 EMC ADR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND FOR MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e); DECLARATION OF ROBERT J. HADLOCK**<br><br>Date:      August 13, 2008<br>Time:     10:30 a.m.<br>Dept.:     C, 15th Floor<br>Before:   Hon. Edward M. Chen |

## I. INTRODUCTION

Plaintiff, DANA LEMANSKI, sustained serious and permanent injuries as a result of his exposure to mercury while he was working as a contract employee at the Los Alamos Nuclear Laboratories ("LANL"). From in or about 1999 to 2001 Plaintiff, who was a facilities engineer, was called upon to perform a number of decommissioning and salvage operations in various LANL facilities that required him to come in contact with areas where no other employees regularly went, including mechanical rooms, pipe trenches, pipe chases and duct chases. Also as part of those duties, Plaintiff was required to examine several burnt out facilities after a 2000 fire that destroyed or damaged certain buildings at LANL. The areas in which Plaintiff was

assigned to go contained numerous mercury containing instruments that had been damaged or destroyed by the fire, which were designed, manufactured and/or distributed by Defendants JOHNSON CONTROLS, INC. and/or JOHNSON CONTROLS NORTHERN NEW MEXICO. Plaintiff was unaware and was never informed by Defendants of the potential danger of mercury exposure from damaged or destroyed instrumentation that contained mercury.

    In or about January 2001, Plaintiff began to suffer permanent personal injuries, including but not limited to, brain damage, fatigue, muscle weakness, gastrointestinal problems and other serious injuries. Although Plaintiff sought treatment from a number of doctors in the ensuing years, and he was diagnosed with numerous illnesses, including chronic fatigue syndrome, fibromyalgia, gastroenteritis and later toxic encephalopathy. However, none of Plaintiff's doctors could discover the cause. Finally, in September 2005, a doctor finally established that the cause was mercury poisoning. Plaintiff had no possible contact with mercury other than through his work at LANL. Because the instrumentation that was damaged or destroyed in the 2000 fire contained mercury to which Plaintiff was exposed, he filed suit against Defendants in California Superior Court in September, 2007.

    Defendants removed the action to this Court and filed a motion to dismiss, which this Court granted without prejudice to allow Plaintiff to file an amended complaint that alleged facts that could defeat the exclusivity rule of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"). Plaintiff did file a Second Amended Complaint ("SAC").

    Defendants have filed another Motion to Strike, claiming Plaintiff still cannot defeat the exclusivity provisions of the EEOICPA. Defendants are wrong. As this Court has stated, the exclusivity under the EEOICPA would only apply where Defendants were "providing management and operation, management and integration, or environmental remediation" services, and where the provision of the instrumentation Plaintiff has alleged was defective was an integral part of those services. Plaintiff has

plead facts that demonstrate neither condition existed, thus defeating the preemption of the EEOICPA. None of Defendants' arguments can show otherwise. As such, Plaintiff urges the Court to deny Defendants' motion and let this case go forward.

Defendants seek, in the alternative, an order from the Court mandating that Plaintiff provide a more definite statement regarding the "instrumentation" that injured him. Defendants' motion in this regard is untimely, as Defendants failed to raise any objections to the identical term used in Plaintiff's *two* prior complaints. As such, Defendants have waived their rights to assert any such claim for vagueness, and the Court must deny their request for a more definitive statement.

## II. PLAINTIFF HAS PLEAD SUFFICIENT FACTS TO DEMONSTRATE THAT THE EEOICPA DOES NOT PREEMPT HIS CLAIMS

Defendant has essentially accused Plaintiff, without any legal or factual support, of manufacturing facts for the sole purpose of "attempting to 'pleading around' the deficiencies identified by this Court..." Aside from this being untrue anyway, Defendants' assertion conveniently ignores the legal standard mandating that the Court accept as true all of the factual allegations as plead, despite Defendants' paying lip service to this standard.[1]

Defendants, on the one hand, readily acknowledge that Plaintiff has plead on information and belief that Defendant JOHNSON CONTROLS NORTHERN NEW MEXICO's maintenance contract has nothing to do with providing instrumentation, or with "management." On the other hand, they ask the Court to ignore that allegation and imply a term not alleged, i.e., that providing instrumentation "in conjunction" with providing *maintenance services* was part and parcel of that agreement. Not only is

---

[1] Plaintiff takes the Court's admonition regarding th mandates of Rule 11 in submitting pleadings. As such, Plaintiff's counsel searched numerous sources in an attempt to obtain information regarding defendants' role with regard to LANL. (Hadlock Decl., ¶2.) The facts contained in paragraph 7 of the SAC are taken almost verbatim from a May 2, 1007 press release issued by LANL regarding the contract extended to Johnson Controls Northern New Mexico. (Id., ¶3.) Nothing in this press release mentions management or supplying any products whatsoever, let alone "instrumentation." (Id.)

there no factual or legal basis for such a conclusion, it defies all logic that a company asked to provide maintenance services would also be asked to provide instrumentation; an activity wholly unrelated to maintenance.

Finally, even assuming, *arguendo*, that the Court agreed that this contract included the provision of instrumentation "in conjunction" with the maintenance contracts, that does not end the analysis. Plaintiff has also alleged that both before and after Defendants were under these maintenance contracts, they provided mercury based instrumentation to LANL. Thus, any instrumentation provided by Defendants outside the timeframe of the maintenance contracts *must*, as a matter of law, fall outside the preemption of the EEOICPA.[2] That also is sufficient to at least allow Plaintiff to conduct discovery to determine, if possible, the dates that the instrumentation that could have injured him was installed.

## IV. DEFENDANTS HAVE WAIVED ANY RIGHT TO ASSERT AN OBJECTION BASED ON ANY SUPPOSED VAGUENESS AS TO THE TERM "INSTRUMENTATION," WHICH HAS APPEARED IN EVERY PREVIOUS COMPLAINT IN THE SAME FORM

In the alternative to dismissing Plaintiff's complaint altogether, which the Court should not do, Defendants request that the Court order Plaintiff to provide a more definite statement regarding the term "instrumentation." Given that Defendants concede Plaintiff's SAC is nearly identical to his prior two complaints, with the exception of Defendants' roles with respect to the LANL, Defendants have waived their right to assert such a request. *Pilgrim Badge & Label Corp. v. Barrios* (1st Cir. 1988) 857 F.2d 1, 3. As the *Pilgrim* court explained:

///

---

[2] Defendants' argument regarding a "fair reading" providing the conclusion that supplying instrumentation somehow must have been part of an unidentified and possibly nonexistent services contract is even further removed than the argument that the Court should impose a nonexistent term in the contract we do know about. Plaintiff urges the Court to reject Defendants' unsupported argument in this regard.

Section (g) of Rule 12 provides, in part: "If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, *the party shall not thereafter make a motion based on the defense or objection so omitted ...*". (Emphasis added.) Section h(1) of Rule 12 provides, in part, "A defense of lack of jurisdiction over the person ... is waived ... if omitted from a motion in the circumstances described in subdivision (g) ...". As the Advisory Committee's notes to subdivision (g) of the Rule indicate, Rule 12 precludes "a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein." *Id.*

It is undisputed that Plaintiff has raised essentially the *identical* claims regarding "instrumentation" in all three versions of his complaint. Until now, Defendants have not taken issue with Plaintiff's references to "instrumentation." Defendants have not, and indeed cannot, provide any credible reason why this term is somehow vague or unintelligible *now*, when they have taken no issue with the same term *for the past nine months*. As such, the Court must deny Defendants' motion in this regard.

V. CONCLUSION

Taking Plaintiff's allegations as true and drawing all inferences in Plaintiff's favor, as the Court must, only one conclusion can be drawn: Plaintiff has plead facts sufficient to defeat the preemption of the EEOICPA. Defendants' assertions are insufficient to defeat these well plead facts. Nor is Defendants' belated objection to Plaintiff's use of the tern "instrumentation" well taken, as Defendants have failed to raise this objection when they had the chance. Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' motion to strike in all respects.

DATED: July 22, 2008                SMITH, CHAPMAN & CAMPBELL
                                    A Professional Law Corporation

                                    _____
                                    Robert J. Hadlock, Attorneys for
                                    Plaintiff, DANA LEMANSKI

## DECLARATION OF ROBERT J. HADLOCK

I, Robert J. Hadlock, declare:

1. I am an attorney admitted to practice in California. I am an associate with the law firm of Smith, Chapman & Campbell, attorneys of record for the Plaintiff in this action. I have personal knowledge of the matters contained in this declaration and, if called as a witness to testify, I could and would competently testify to them.

2. In attempting to gather all of the information I could find regarding Defendants' roles with respect to LANL, I searched several sources, mostly on the Internet.

3. I obtained a copy of a press release from LANL's website announcing the maintenance contract awarded to Defendant Johnson Controls Northern New Mexico. I quoted almost verbatim portions of that press release on information and belief in our SAC. Nothing in that press release mentions supplying instrumentation, or any products, for that matter, in conjunction with the maintenance contract.

4. I was just informed today by opposing counsel that he believed our opposition is late. That may be true. If so, it was an inadvertent oversight by my secretary, who calendared the deadline based on the state rule allowing five additional days to reply, as opposed to the federal rule only allowing three additional days. I apologize for the oversight, and ask the Court's indulgence to file our opposition one day late.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22nd day of July, 2008, at Santa Ana, California.

Robert J. Hadlock