1  GREENBERG TRAURIG, LLP
   José A. Isasi, II
2  (Admitted *pro hac vice*)
   77 West Wacker Drive Suite 2500,
3  Chicago IL 60601
   Telephone: (312) 456-8400
4  Facsimile: (312) 456-8435
   isasij@gtlaw.com
5
   Lisa L. Halko - SBN 148873
6  1201 K Street, Suite 1100
   Sacramento, CA 95814-3938
7  Telephone: (916) 442-1111
   Facsimile: (916) 448-1709
8  halkol@gtlaw.com

9

10 Attorneys for Defendants
   Johnson Controls, Inc., and
   Johnson Controls of Northern New Mexico, LLC
11
                 **UNITED STATES DISTRICT COURT**
12
               **NORTHERN DISTRICT OF CALIFORNIA**
13

14 DANA LEMANSKI,                          )  CASE NO. C 08-00548 EMC
                                           )
15         Plaintiff,                       )  **DEFENDANTS JOHNSON CONTROLS,**
                                           )  **INC.'S AND JOHNSON CONTROLS**
16                                          )  **OF NORTHERN NEW MEXICO, LLC'S**
   v.                                       )  **REPLY IN SUPPORT OF THEIR**
17                                          )  **MOTION TO DISMISS PURSUANT TO**
                                           )  **FRCP 12(b)(6) AND FOR A MORE**
18 JOHNSON CONTROLS, INC., a Wisconsin     )  **DEFINITE STATEMENT PURSUANT**
   Corporation; JOHNSON CONTROLS,          )  **TO FRCP 12(e)**
19 NORTHERN NEW MEXICO, and DOES 2 to      )
   100, inclusive,                          )  Date:  August 13, 2008
20                                          )  Time:  10:30 a.m.
           Defendants.                      )  Dept.  C. 15th Floor
21                                          )
                                           )  Assigned to:
22                                          )  Magistrate Judge Edward M. Chen
                                           )
23 _____ )

24                              I.

25                        __INTRODUCTION__

26      Defendants Johnson Controls, Inc. ("JCI") and Johnson Controls of Northern New

27 Mexico, LLC, ("JCNNM") (collectively, "Defendants") filed the pending Motion to Dismiss

28 and For a More Definite Statement. These Motions are directed at Plaintiff's Second Amended

                                           1                    Case No. C-08-00548 EMC

1   Complaint ("SAC"). They argue, first, that the SAC should be dismissed because Plaintiff's

2   state law claims are preempted by the Energy Employees Occupational Illness Compensation

3   Program Act, 42 U.S.C. § 7384 *et. seq.* ("EEOICPA" or the "Act"). In the alternative, a More

4   Definite Statement should be ordered pursuant to F.R.Civ.P. 12(e) because Plaintiff's new

5   allegations concerning the Defendants' alleged manufacturing and supply of "instrumentation"

6   to the facility at Los Alamos National Lab ("LANL") are so vague that the Defendants cannot

7   prepare a responsive pleading. *See*, SAC at ¶ 7.

8           In Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition"),

9   Plaintiff does not challenge the Defendants' legal analysis of the EEOICPA. Instead the

10  Plaintiff asserts, based on a strained reading of the SAC, that he has alleged that Defendants

11  provided unspecified "instrumentation" outside the scope of the operations and maintenance

12  contracts the Defendants allegedly had with LANL. Therefore, Plaintiff argues, the allegations

13  are outside the preemptive scope of the EEOICPA. Plaintiff, however, fails to examine this

14  Court's Order dated May 14, 2008, in which this Court identified the boundaries of the

15  preemptive scope of the Act.

16          In opposing the Motion for a More Definite Statement, the Plaintiff makes the

17  misguided and legally unsupported argument that under F.R.Civ.P. 12(h) since the phrase

18  "instrumentation" appeared in the First Amended Complaint, and was not challenged in

19  Defendants' Motion to Dismiss that Complaint, Defendants have waived the right to seek a

20  more definite statement. Plaintiff's argument fails to acknowledge that it is his new allegations,

21  not present in the First Amended Complaint, which for the first time render the

22  "instrumentation" relevant. Plaintiff also fails to recognize that F.R.Civ.P. 12(h) restricts

23  multiple attacks on the <u>same complaint</u>. It does not prohibit a motion to dismiss an amended

24  complaint filed because the predecessor complaint was found to be legally deficient. No legal

25  authority supports the Plaintiff's argument.

26  ///

27  ///

28  ///

**II.**

**ARGUMENT**

A.  **When the SAC is Read in its Entirety, it Alleges That Instrumentation Which Caused Plaintiff's Injuries Was Supplied "In Conjunction With" Defendants' Services as Subcontractors at LANL.**

This Court could not have been clearer in its May 14, 2008, Order on the preemptive scope of the EEOICPA:

> [I]f those instruments were at LANL in conjunction with [Defendants'] providing services as a contractor or subcontractor, the exclusivity provision applies.

*See,* Order Granting Defendants' Motion to Dismiss entered May 14, 2008 ("Order of May 14, 2008"), at p. 5 (footnote omitted).  The Court's ruling is in full accord with the exclusive remedy provision of the EEOICPA, which indicates that the Act is the "Exclusiv[e]. . . Remedy Against the United States and against Contractors and Subcontractors.  42 U.S.C. § 7385c.  The Act is the exclusive remedy "instead of all other liability," for "a subcontractor that provided services, including construction, at a Department of Energy facility (in its capacity as a subcontractor). . ." *See, id.*

Plaintiff has not challenged the Defendants' argument that the sole substantive change between the First Amended Complaint and the SAC with respect to the exclusive remedy provision is the inclusion of new paragraph 7 of the SAC.  That paragraph continues to allege that the Defendants were subcontractors to the Regents of the University of California to provide services at LANL.  (SAC at ¶ 7.)  By the very terms of Plaintiff's SAC, the exclusive remedy provision applies.

Plaintiff protests that the allegations of paragraph 7 indicate that supplying or distributing instrumentation was not part of the subcontracts entered into by the Defendants, and further, that one of the Defendants supplied instrumentation before entering into the subcontracts at LANL.  Even if taken as true (and the Defendants will address the falseness of certain assertions from Plaintiff's response *infra*) these statements are insufficient to carry the Plaintiff's Complaint beyond the reach of the exclusive remedy provision of the EEOICPA.

First, Plaintiff freely admits in paragraph 7 of the SAC that the Defendants allegedly provided construction support and engineering services at LANL. He also concedes that the alleged instrumentation was supplied by the Defendants during at least two critical time periods: 1) the time period when Johnson Controls, Inc. allegedly provided services as a subcontractor at LANL, and 2) the time period after Johnson Controls of Northern New Mexico allegedly assumed responsibility as a subcontractor at LANL. *See, id.* ("Defendant JOHNSON CONTROLS, INC. had been responsible for designing, manufacturing, supplying and/or distributing instrumentation for LANL before it enter into the above-described subcontracts, and continued to provide instrumentation after the aforesaid subcontracts were taken over by Defendant, JOHNSON CONTROLS NORTHERN NEW MEXICO.") Thus, the complaint alleges that the "instrumentation" was provided directly by these Defendants "for LANL." Therefore, even if its instrumentation was not provided pursuant to the subcontracts the Plaintiff refers to, they were clearly provided directly by the Defendants to LANL pursuant to some subcontract. Surely, Plaintiff is not asking this Court to draw the inference that the Defendants gratuitously provided, and the United States Department of Energy gratuitously accepted, "instrumentation" into one of the most secure, secret nuclear weapons facilities in the United States in the absence of a contract.

Further, it is clearly based on Plaintiff's allegations that instrumentation was provided during the time period when the Defendants were allegedly subcontractors at LANL. The language of the exclusive remedy provision of the EEOICPA does not require the subcontract at issue to involve the supplying of products to a DOE facility. This Court recognized this fact when it correctly identified that if the "instruments were at the LANL in conjunction with [Defendants]' providing services as a contractor or subcontractor, the exclusive remedy provision applies." *See,* Order of May 14, 2008 at 5 (emphasis added). Thus, Plaintiff's claims are completely preempted by the EEOICPA.

Before addressing the alternative relief sought by the Defendants pursuant to Rule 12(e), the Defendants are compelled to correct misstatements by the Plaintiff in his Opposition. Plaintiff claims to have taken seriously this Court's admonition, both at oral argument on the

1    initial Motion to Dismiss and in its Order of May 14, 2008, concerning his Rule 11 obligations.

2    Plaintiff claims that the allegations regarding the scope of the subcontracts allegedly entered

3    into by the Defendants at LANL are "taken almost verbatim from a May 2, 1007 [*sic.*] press

4    release issued by LANL regarding the contract extended to Johnson Controls Northern New

5    Mexico." Plaintiff's response at 3, n. 1. Plaintiff attaches a Declaration to support this claim.

6    However, Plaintiff does not attach this purported press release to the Declaration.

7          Even correcting for the moment the typographical error and assuming Plaintiff actually

8    meant a "May 2, 2007 press release," this Court should be highly skeptical of accuracy of the

9    allegations in the Complaint. That is because Johnson Controls of Northern New Mexico's

10   subcontract for services at LANL ended in 2003, and its role at LANL was assumed by KSL

11   Services Joint Venture ("KSL"). *See,* Declaration of José A. Isasi, II in Support of

12   Defendants' Motion to Transfer Venue to the District of New Mexico (Docket No. 35) at ¶¶ 3

13   and 4. Thus, the subcontract was not extended to JCNNM on or about May of 2007, and it is

14   highly unlikely that a mysterious "press release" allegedly issued by LANL made such a

15   representation. While the Defendants understand this Court is required to take the well-pled

16   allegations of the Plaintiff's SAC as true, the Defendants wish the record to be clear

17   concerning these highly questionable allegations.

18         In any case, as Defendants establish above, even if all its allegations are accepted as

19   true the SAC alleges that the "instrumentation" was provided "in conjunctions with"

20   Defendants work as contractors and subcontractors. The exclusive remedy provisions of the

21   EEOICPA apply, and the SAC should be dismissed.

22   **B.    The Defendants Have Not Waived Their Right to Seek a More Definite Statement
           Under FRCP 12(e).**

23         Significantly, Plaintiff does not attempt to muster even a half-hearted defense of the

24   adequacy of his allegations regarding "instrumentation." Not once does Plaintiff challenge the

25   Defendants' contention that these allegations are so vague and confusing that they require a

26   More Definite Statement. By failing to argue the adequacy of his allegations, Plaintiff has

27   waived his right to contest this issue.

28

1    Instead, in an argument replete with factual errors and inapplicable law, the Plaintiff

2    argues that the Defendants' alternative request under F.R.Civ.P. 12(e) was waived when it was

3    not included in their Motion to Dismiss the Plaintiff's First Amended Complaint. However, the

4    Defendants' Motion seeks a More Definite Statement regarding allegations and issues raised

5    and made relevant for the first time due to the inclusion of new paragraph 7 of the SAC.

6    Specifically, the allegations in that paragraph for the first time a claim that the Defendants were

7    responsible for the "instrumentation" which allegedly caused Plaintiff's injuries.

8        Moreover, even if there had been no new allegations concerning "instrumentation" in

9    the SAC, the prohibitions of Rule 12(g)(2) would still be inapplicable.   Plaintiff's legal

10   authority does not support his argument that the alternative request for a More Definite

11   Statement is a violation of Rule 12(g)(2), since the Motion was brought to attack an successor

12   complaint after the successful bringing of an initial Motion to Dismiss, and does not represent

13   the serial attack on the same complaint.

14       **1.      The New Allegations of Plaintiffs' Second Amended Complaint Raise New
             Issues That Were Not Present in the First Amended Complaint.**
15
         Plaintiff claims that he made "identical" claims concerning "instrumentation" in three
16
     different complaints, none of which were objected to until the present motion.   This is
17
     misleading from both a factual and procedural standpoint. First, Plaintiff's original Complaint,
18
     filed on September 26, 2007 in state court in Alameda County, California, was neither
19
     answered nor the subject of a motion under Rule 12. Instead, it was superseded by the filing of
20
     the First Amended Complaint.   On January 17, 2008, Plaintiff filed his First Amended
21
     Complaint in Superior Court in Alameda County, California. This Complaint was removed and
22
     then subject to the Defendants' original 12(b)(6) Motion to Dismiss, based on the exclusive
23
     remedy provision of the EEOICPA.
24
         On May 28, 2008, the Plaintiff filed his SAC.   As previously set forth, the SAC
25
     contained a brand new paragraph (paragraph 7) which did not mirror any allegations in the
26
     original Complaint or the First Amended Complaint.   It is these allegations which necessitated
27
     the Defendants' Motion for a More Definite Statement.   Thus, while Plaintiff argues that the
28

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FRCP
12(b)(6) AND FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e)**
CHI 57 277 270v2 7 28 08

1  word "instrumentation" appears in two prior versions of the Complaint, this argument is

2  misleading, since neither an answer nor any responsive pleading was filed by the Defendants

3  with respect to the original Complaint. (Plaintiff's Opposition at 4.)

4      Plaintiff's argument is premised upon his argument "that Plaintiff has raised essentially

5  the *identical* claims regarding 'instrumentation' in all three versions of his Complaint."

6  (Plaintiff's Opposition at 5.) That premise is false. While the word "instrumentation" may have

7  appeared in the First Amended Complaint, the allegations of the Second Amended Complaint

8  with respect to this instrumentation, and the arguments which arose as a result of the allegations

9  of the First Amended Complaint, differ materially from the allegations of the Second Amended

10 Complaint. **Most importantly, Plaintiff's First Amended Complaint did not allege that the**

11 **Defendants engaged in "designing, manufacturing, supplying and/or distributing**

12 **instrumentation for LANL. . ."** (SAC at ¶ 7.) That allegation is found only, and for the first

13 time, in paragraph 7 of Plaintiff's Second Amended Complaint.

14      The issue of "instrumentation" was not relevant in the Defendants' Motion to Dismiss

15 the First Amended Complaint.[1]  The First Amended Complaint was devoid of any specific

16 allegation that the Defendants supplied instruments which contained mercury at Los Alamos

17 National Labs, or that the Defendants placed this "instrumentation" into the stream of

18 commerce where it was ultimately used at LANL. It was not until the allegations of the SAC,

19 and specifically, new paragraph 7, that the "instrumentation" referenced in the Complaint was

20 tied directly to the Defendants as designers, manufacturers, suppliers and/or distributors. (SAC

21 at ¶ 7.) Therefore, it was not until the filing of the SAC that a Rule 12(e) Motion for a More

22 Definite Statement became ripe. Only when the allegations of new paragraph 7 purported to tie

23 the Defendants to the "instrumentation" did it become necessary for the Defendants to

24 understand what they meant.

25

26 [1] Plaintiff appears to be engaging in rhetorical bootstrapping. In his Partial Opposition to the
   Defendants' Motion to Dismiss the First Amended Complaint, Plaintiff first raised certain claims *in that*
27 *brief* about a connection between the Defendants and the alleged "instrumentation." As the Defendants
   explained in their Reply, those claims were unsupported by any citation to actual allegations in the First
28 Amended Complaint and therefore could not be considered.

1       **2.    Plaintiff's "Waiver" Argument is Based Upon a Misreading of Rule 12(g)(2)**

2                 **and a Misunderstanding of its Purpose.**

3       While Plaintiff's basis for objecting to the Motion for a More Definite Statement is not

4  clearly articulated, it apparently is based on a misreading of F.R.Civ.P. 12(g)(2), which states in

5  part that "a party that makes a motion under this rule must not make another motion under this

6  rule raising a defense or objection that was available to the party but omitted from its earlier

7  motion." Plaintiff misconstrues Rule 12(g)(2) as a prohibition against a subsequent attack on

8  an Amended Complaint after the <u>dismissal of a prior version of the Complaint</u>. From the

9  language of the Rule, the Advisory Committee note, and even the Plaintiff's only legal

10  authority cited in support of opposition, it is clear that the purpose of this Rule is to prohibit

11  serial, piecemeal attacks on the same version of a complaint.

12       The Defendants have conducted an exhaustive search of the case law and cannot find a

13  single reported instance where, as here, a party filed a successful motion to dismiss a complaint

14  under Rule 12(b)(6), but were subsequently denied the right to file a Rule 12(e) Motion for

15  More Definite Statement directed at the successor complaint. The absence of a decision so

16  finding is consistent with the guidance provided by the Advisory Committee in its notes to the

17  1946 and 1966 amendments to Rule 12, the combination of which resulted in the current

18  wording of Rule 12(h). The note to the 1946 amendment to subdivision (g) indicates that the

19  purpose of the amendment: "[A] party who resorts to a motion to raise defenses specified in the

20  Rule, must include in one motion all that are then available to him. Under the original Rule,

21  defenses which would be raised by motion or divided into two groups which could be the

22  subject of two successive motions." *See*, F.R.Civ.P. 12 Advisory Committee's note, 1946

23  amendment, subdivision (g). The Advisory Committee note to the 1966 amendment to Rule

24  12(g) provides this example for the proper application of the subdivision of the Rule: "Thus if

25  the Defendant moves before answer to dismiss the complaint for failure to state a claim, he is

26  barred from making a further motion presenting the defense of improper venue, if that defense

27  was available to him when he made his original motion." *See, id.*, note to 1966 amendment,

28  subdivision (g).

1    Plaintiff's own legal authorities demonstrate Plaintiff has misconstrued the prohibition

2    found in Rule 12(g). Plaintiff cites *Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st

3    Cir. 1988) as his sole legal support of his waiver argument. However, the procedural posture of

4    that case was fundamentally different than the present case. In *Pilgrim Badge*, the Plaintiff

5    filed a complaint seeking declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §

6    2201(a), pursuant to diversity of citizenship and alleged that venue was proper in the District of

7    Massachusetts pursuant to 28 U.S.C. § 1391(a). *Id.*, 857 F.2d at 1. The defendant moved to

8    dismiss the complaint for lack of proper venue pursuant to F.R.Civ.P. 12(b)(3) and 28 U.S.C. §

9    1406(a), and alternatively sought an order transferring the case pursuant to 28 U.S.C. § 1404(a)

10   for consolidation with a case pending in the Central District Court of California. *Id.*, at 2.

11   The District Court found that Massachusetts was a proper venue for the action. *Id.*

12   However, the District Court proceeded, *sua sponte*, to dismiss the suit for lack of personal

13   jurisdiction. *Id.* Plaintiff appealed this decision to the First Circuit Court of Appeals, arguing

14   that the defendant, by failing to challenge personal jurisdiction in its Rule 12(b)(3) motion, had

15   waived that defense pursuant to Rule 12(g). *Id.* The Court of Appeals agreed, relying in part

16   on the same provision from the Advisory Committee note to the 1966 amendment to 12(g)

17   recited above. The Court also found that a district court had no authority to dismiss the case

18   *sua sponte* for lack of personal jurisdiction. *Id.* Therefore, the Court Appeals vacated the

19   district court's order and remanded.

20   Plaintiff's reliance on *Pilgrim Badge* is thus completely misplaced. Even a reading of

21   that case viewed generously for Plaintiff's argument only suggests that serial, piecemeal attacks

22   on the same complaint will not be permitted by the Court. The case does not go as far as

23   Plaintiff would have this Court believe -- that even the filing of a successful motion to dismiss

24   a complaint, means all subsequent motions under Rule 12 are prohibited, unless they address

25   something in the subsequent complaint that is completely unique to that complaint. Following

26   Plaintiff's argument to its logical conclusion, if Plaintiff had filed an SAC that was identical to

27   the First Amended Complaint which this Court dismissed, the Defendants would be barred

28   from bringing another Rule 12(b)(6) motion against that Complaint. This is inconsistent not

1  only with the language and spirit of Rule 12(h), the guidance found in the Advisory Committee

2  notes, but also the more than a century-old concept that "an amended complaint ordinarily

3  supersedes the original and renders it of no legal effect." *International Controls Corp. v.*

4  *Vesco*, 556 F.2d 665, 668-69, (2d Cir. 1977), *citing Washer v. Bullitt County*, 110 U.S. 558,

5  562, 4 S. Ct. 249 (1884); 3 Moore's Federal Practice P 15.08(7) (Second ed. 1974); 6 C. Wright

6  & A. Miller, Federal Practice and Procedure § 1476, at 389-90 (1971).

### III.

### CONCLUSION

9  For the forgoing reasons and those which may be presented at oral argument, the

10  Defendants respectfully request that this Court enter an order dismissing, with prejudice,

11  Plaintiff's Second Amended Complaint. In the alternative, Defendants ask this Court to order

12  that Plaintiff file a Third Amended Complaint for the sole purpose of providing additional

13  information regarding the alleged "instrumentation" which Defendants are alleged to have

14  designed, manufactured, supplied, or distributed to LANL.

July 28, 2008                              Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
    José A. Isasi, II
    Lisa L. Halko
    Attorneys for Defendants
    JOHNSON CONTROLS, INC., and
    JOHNSON CONTROLS OF NORTHERN
    NEW MEXICO, LLC

*Dana Lemanski vs. Johnson Controls, Inc., et al.*
US District Court, Northern District Case No.: C 08-00548 EMC

## DECLARATION OF SERVICE

I am a citizen of the United States, over the age of 18 years, and not a party to or interested in this action. I am an employee of Greenberg Traurig LLP, and my business address is 1201 K Street, Suite 1100, Sacramento, CA 95814. On this day I caused to be served the following document(s):

*DEFENDANTS JOHNSON CONTROLS, INC.'S AND JOHNSON CONTROLS OF NORTHERN NEW MEXICO, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e)*

☒    by placing ☐ the original ☒ a true copy into sealed envelopes addressed and served as follows:

☐    By placing a true copy, in a sealed envelope, with postage fully prepaid, in the United States Post Office mail at Sacramento, California, addressed as set forth below. I am familiar with this firm's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mail box after the close of the day's business.

☒    By personal delivery of a true copy to the person and at the address set forth below.

Steve C. Smith                          *Attorney for Plaintiff*
William D. Chapman
Robert J. Hadlock
SMITH, CHAPMAN & CAMPBELL
1800 North Broadway, Suite 200
Santa Ana, CA 92706
(714) 550-7720
(714) 550-1251 fax

☐    By Federal Express Mail to the person and at the address set forth below.

☐    By transmitting a true copy by facsimile to the person and at the facsimile number set forth below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on *July 28, 2008,* at Sacramento, California.

SHEILA D. BROWN

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FRCP
12(b)(6) AND FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e)
CHI 57 277 270v2 7-28-08